J-S53016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MATTHIAS JOHN JOHNSON, | |
| Appellant | No. 1915 WDA 2013 |

Appeal from the Judgment of Sentence August 22, 2013
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0001183-2012

BEFORE:  DONOHUE, OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 23, 2014**

Appellant, Mathias John Johnson, appeals from the judgment of sentence entered on August 22, 2013 in the Criminal Division of the Court of Common Pleas of Butler County.  We affirm.

The factual history and procedural background in this case are not in dispute.  On January 26, 2012, Appellant was involved in a motor vehicle accident in Butler, Pennsylvania.  Officer Chad E. Rensel ("Officer Rensel") of the Butler City Police Department arrived at the scene and noticed that Appellant displayed signs of intoxication, including but not limited to emission of an odor of marijuana.  Officer Rensel placed Appellant under arrest for suspicion of driving under the influence and arranged to have Appellant's vehicle towed from the scene of the accident.  Appellant consented to a legal blood draw at Butler Memorial Hospital and NMS Labs

*Retired Senior Judge assigned to the Superior Court.

("NMS") analyzed the sample. The tests performed by NMS revealed various controlled substances in Appellant's blood.[1]

On September 24, 2012, the Commonwealth filed a criminal information charging Appellant with two counts of driving under the influence ("DUI"), 75 Pa.C.S.A. § 3802(d)(2) and one count of required financial responsibility, 75 Pa.C.S.A. § 1786(f), a summary offense.[2] Appellant did not file pre-trial motions and, after several continuances, proceeded to a non-jury trial.

The trial court convened Appellant's non-jury trial on July 1, 2013. During that proceeding, the court admitted Appellant's blood test results into evidence through the testimony of Dr. Edward Barbieri ("Dr. Barbieri"), NMS' assistant laboratory director and forensic toxicologist. As the trial court described:

> [Dr. Barbieri] testified at trial that although he did not perform the testing, he did review all of the data, put the report together and signed it. No other technician or toxicologist signed the report. At trial, Dr. Barbieri provided extensive testimony regarding the results and conclusions he reached after analyzing the data. He concluded, based upon his training and experience, that the level of [marijuana] found in [Appellant's] blood sample produced impairment of [Appellant's] ability to safely operate a motor vehicle. The toxicology report was submitted by the

---

[1] Specifically, the tests showed the presence of marijuana, benzodiazepines (lorazepam and clonazepam), and methadone in Appellant's blood. N.T. 7/1/13, at 5.

[2] The Commonwealth subsequently withdrew one of Appellant's DUI charges. Trial Court Order, 7/2/13.

Commonwealth as Commonwealth's Exhibit "1" and was admitted without objection by [Appellant's] counsel.

Trial Court Order, 11/12/13, at 1-2.

At the conclusion of trial, the court issued its verdict finding Appellant guilty of one count each of DUI and required financial responsibility. Thereafter, on August 22, 2013, the court sentenced Appellant to 72 hours to six months' incarceration along with statutorily mandated obligations for a DUI offender. The court also ordered Appellant to pay a fine for his financial responsibility conviction.

On August 30, 2013, Appellant timely filed a post-sentence motion for judgment of acquittal.[3] The motion alleged that admission of the NMS report violated Appellant's constitutional right to confront witnesses who offer evidence against him "since [Appellant's] blood test results were admitted through a laboratory supervisor who was not the laboratory technician who actually performed the blood test[s]." Appellant's Post-Sentence Motion for Judgment of Acquittal, 8/30/13, at 1. Following argument on Appellant's

_____

[3] This was the first time Appellant raised any objection to the NMS lab report. As the trial court noted, counsel for Appellant indicated he had no objection to the Commonwealth's motion to admit the report into evidence. **See** N.T., 7/1/13, at 14.

motion, the court entered an order that denied relief. Trial Court Order, 11/12/13. This timely appeal ensued.[4]

In the sole issue he raises on appeal, Appellant claims that the trial court abused its discretion or erred as a matter of law in denying his post-sentence motion for judgment of acquittal. In particular, Appellant alleges that the admission of his toxicology report through Dr. Barbieri violated his confrontation clause rights because Dr. Barbieri was not the individual who performed the tests on Appellant's blood sample. Appellant also contends that Dr. Barbieri "did not offer any independent opinion concerning Appellant's toxicology testing or results which found various controlled substances." *Id.* at 15. According to Appellant, Dr. Barbieri did not supervise the NMS' blood tests and he "essentially read the lab report as his testimony." *Id.* at 14. In the absence of independent verification of the types or amounts of drugs detected in Appellant's bloodstream, Appellant concludes that Dr. Barbieri was not sufficiently involved in the NMS' testing so as to surmount a confrontation clause challenge. Thus, Appellant asserts that Dr. Barbieri offered only surrogate testimony of the type which was

_____

[4] By order entered on December 20, 2013, the trial court directed Appellant to file, within 21 days, a concise statement of errors complained of on appeal pursuant to Pa.R.a.P. 1925(b). Appellant preserved the issue he now raises on appeal by incorporating his claim within a timely concise statement filed on January 15, 2014. On March 12, 2014, the trial court issued a statement pursuant to Pa.R.A.P. 1925(a) directing this Court's attention to the order docketed on November 12, 2013 as the place within the record where the reasons for the challenged determination could be found.

deemed unconstitutional by the United States Supreme court in ***Bullcoming v. New Mexico***, 131 S.Ct. 2705 (U.S. 2011).

"Whether the admission of [a t]oxicology [r]eport violate[s] Appellant's rights under the [c]onfrontation [c]lause is a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Yohe***, 79 A.3d 520, 530 (Pa. 2013). The confrontation clause of the Sixth Amendment to the United States Constitution "guarantees a defendant's right to confront those who bear testimony against him[.]"[5] ***Id.*** at 531 (internal quotations omitted). "[T]estimony [is defined] as a solemn declaration or affirmation made for the purpose of establishing or proving some fact." ***Id.*** (case citation and internal quotations omitted). Under the Sixth Amendment, the Commonwealth may not present "out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." ***Id.***

Toxicology reports admitted in DUI prosecutions are "testimonial" for purposes of confrontation clause analysis. ***Id.*** at 537. Therefore, the analyst who generates such a report must testify at trial and Appellant is entitled to confront the witness. ***See id.*** at 537-538. Appellant claims he

_____

[5] Article I, Section 9 of the Pennsylvania Constitution offers similar protection and allows an accused to confront the witnesses against him.

was deprived of this opportunity because Dr. Barbieri, the witness called by the Commonwealth to discuss his toxicology report at trial, did not personally conduct the tests on Appellant's blood sample. We see no merit in Appellant's claim.

Our Supreme Court recently rejected a virtually identical claim in *Yohe*. There, the Supreme Court held that a forensic analyst who reviewed the underlying data and prepared and signed the challenged report constituted "the analyst whom [a]ppellant had a right to confront." *Id.* at 540. In reaching its conclusion, the Court reasoned:

> Although Dr. Blum did not handle [a]ppellant's blood sample, prepare portions for testing, place the prepared portions in the machines, or retrieve the portions after testing, these facts are not dispositive, and do not account for Dr. Blum's involvement in utilizing the information provided by his subordinates, legitimately relying on their work and that of other employees in the lab who logged receipt of the sample, checked the integrity of the sample, ensured proper storage, and of the phlebotomist who drew [a]ppellant's blood at the hospital. The Commonwealth complied with [*Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009)] by introducing the Toxicology Report with a witness competent to testify to the truth of the statements made in the report, and complied with *Bullcoming* by assuring [a]ppellant's right to be confronted with the in-court testimony of the scientist who evaluated the raw data in the case file and signed the certification.

*Yohe* at 540-541.

We find these dispositive factors supporting admission to be present in the instant case. Dr. Barbieri was the assistant director and forensic toxicologist at NMS. Although he conceded that he did not personally perform toxicology tests, he testified that he reviewed all of the data

generated by other laboratory personnel and prepared and signed Appellant's toxicology report. N.T., 7/1/13, at 4. Moreover, contrary to Appellant's contentions, the NMS report and Dr. Barbieri's testimony reflect independent assessments regarding the significance of the data recovered from the tests performed on Appellant's blood. **See id.** at 4-14 (reviewing the nature and type of drug compounds detected in Appellant's blood, the therapeutic and non-therapeutic uses of those compounds, the significance of the observed concentrations, the potential interactions between the drugs, and the potential for impairment resulting from ingestion of the various drugs). In sum, Dr. Barbieri did not present mere surrogate testimony regarding the analysis of Appellant's blood sample. In fact, his testimony and the introduction of the NMS report through a witness who was competent to verify its contents, combined with Appellant's opportunity to confront the scientist who evaluated the raw data and signed the certification in this case, assure us that the trial court did not run afoul of the Sixth Amendment herein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/23/2014